Filed 1/17/25  In re E.V. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re E.V., a Person Coming Under the Juvenile Court Law. | C101648 |
| YOLO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>P.V.,<br><br>Defendant and Appellant. | (Super. Ct. No. JV2024-0024) |

Appellant P.V. (father) appeals from the juvenile court's jurisdictional and disposition orders.  The trial court found the minor, E.V., a dependent child of the court and removed the minor from his parents' custody with continued placement in a foster home while reunification services were being provided.  In those orders, the juvenile court made no findings concerning the Indian Child Welfare Act of 1978 (ICWA)

1

(25 U.S.C. § 1901 et seq.) and related state law (Welf. & Inst. Code, § 224.2, subd. (a)).[1] Father argues the Yolo County Health and Human Services Agency's (Agency) investigation was inadequate and asks this court to conditionally reverse the juvenile court's orders with directions for the Agency to comply with the ICWA's inquiry and notice requirements on remand. We conclude this challenge is premature and will dismiss the appeal.

BACKGROUND

The minor was born in February 2024. That same month, the Agency filed a dependency petition under section 300, subdivision (b)(1). The petition alleged father had a substance abuse problem and hospital personnel observed him acting in an irrationally agitated manner towards hospital staff during the birth of the minor. The hospital staff also reported father had glazed eyes and slow blinking. Father's reported criminal history included multiple charges of battery on a spouse or cohabitant, inflicting corporal injury on a spouse, burglary, and possession of a controlled substance. Father had served time in prison and had multiple parole and probation violations. At an in-home visit shortly after the birth, the minor's mother, E.M. (mother) claimed father did not use drugs and was merely tired at the hospital. But drugs and drug paraphernalia were observed in the bathroom of the home. Once again, father showed signs of illicit substance abuse.

The initial detention report recommended the minor remain in protective custody until the jurisdictional hearing. The report stated that the ICWA did not apply. When the social worker asked mother and father about any Native American ancestry, both reported they had none. Mother also told the social worker her maternal grandmother was deceased and she did not know her father. The Agency's child welfare history for mother's family indicated mother may have siblings who may have "further information

---

[1]     Further undesignated statutory references are to the Welfare and Institutions Code.

about Native American heritage." Nothing in the record demonstrates the Agency contacted any of these siblings or attempted to do so.

Father told the Agency he would contact the paternal grandmother who lived in Arizona. Meanwhile, the Agency represented to the juvenile court it would continue to make efforts to gather information on any Native American ancestry of the minor. The record does not demonstrate the Agency asked father for contact information to follow up on this potential source of information.

At the detention hearing, mother and father reaffirmed they had no Native American ancestry. The juvenile court noted the indication of other family members but declined to make any findings concerning the ICWA at the hearing. The juvenile court removed the minor from the parents' custody and ordered supervised visitation for the parents. The juvenile court ordered that mother be offered reunification services immediately.

In the jurisdictional report, the Agency reported mother again affirmed she had no known Native American ancestry within her family, as did father. Father said he would contact his mother to make further inquiry, but stated he would decline to sign an ICWA-020 form until after the jurisdictional hearing.

At the initial contested jurisdictional hearing, father and mother appeared. The juvenile court again made no orders or findings concerning the ICWA. The court granted mother and father supervised visitation.

In the disposition report, the Agency reported father and mother provided signed ICWA-020 forms stating they had no Native American ancestry, and no other family members were available that the Agency could contact to inquire about Indian heritage.

Father and mother appeared at the continued contested jurisdictional and disposition hearings.

At the conclusion of the jurisdictional and disposition hearings, the juvenile court adjudged the minor a dependent of the court, removed the child from the custody of the

3

parents, ordered reunification services for both mother and father, and set forth a visitation schedule.  The juvenile court further set the six-month review for December 2024.  Once again, the juvenile court rendered no orders concerning the ICWA.

Father filed a timely appeal.

DISCUSSION

Father argues the Agency failed to meet the ICWA's requirement to conduct an adequate initial inquiry and continuing inquiry into whether the minor has Native American ancestry by contacting father's extended family or mother's siblings to inquire about such heritage.  Given that the juvenile court has yet to issue any findings on this subject, we conclude this issue is not yet ripe for review.

Congress enacted the ICWA to protect Indian children and "to promote the stability and security of Indian tribes and families" by formalizing federal policy and standards regarding the removal and placement of Indian children outside the family home.  (25 U.S.C. § 1902; see *In re Dezi C.* (2024) 16 Cal.5th 1112, 1129; *In re Austin J.* (2020) 47 Cal.App.5th 870, 881, disapproved on other grounds in *In re Dezi C.*, at p. 1152, fn. 18.)  The juvenile court and social services agency have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child.  (Cal. Rules of Court, rule 5.481(a);[2] § 224.2, subd. (a).)  "Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child."  (§ 224.2, subd. (b)(2).)  " '[E]xtended family members' " include "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent."  (25 U.S.C. § 1903(2); see § 224.1, subd. (c).)

---

**2**     Undesignated rule references are to the California Rules of Court.

"This 'duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.' " (*In re Dezi C., supra*, 16 Cal.5th at p. 1132.) "When the agency has 'reason to believe' that an Indian child is involved, further inquiry regarding the possible Indian status of the child is required. (§ 224.2, subd. (e); see also rule 5.481(a)(4).)" (*Ibid.*, fn. omitted.) "If the inquiry establishes a reason to know an Indian child is involved, notice must be provided to the pertinent tribes. (§ 224.3, subds. (a), (b); 25 U.S.C. § 1912(a).)" (*Id.* at p. 1133.)

In *J.J. v. Superior Court* (2022) 81 Cal.App.5th 447, the mother filed a petition for extraordinary relief pursuant to rule 8.452 after the jurisdictional/disposition hearing. The juvenile court had not made any ICWA findings. On appeal, she contended the juvenile court erred by failing to comply with the ICWA inquiry and notice requirements. (*J.J.*, at pp. 450, 455, 460-461.) A different panel of this court concluded, "Here, because the juvenile court made no final ICWA ruling at or before the challenged dispositional hearing as to whether the ICWA applied to the proceedings, mother's claim is premature. That is, ICWA issues are not ripe for review." (*Id.* at p. 461.) Our court further noted, " ' "Ripeness" refers to the requirements of a current controversy.' [Citation.] An issue is not ripe for review unless and until it is 'sufficiently concrete to allow judicial resolution even in the absence of a precise factual context.' " (*Ibid.*) Finally, the appellate court concluded, "Because the dependency case is still ongoing, any perceived deficiencies with ICWA inquiry and noticing may still be resolved during the normal course of the ongoing dependency proceedings. Therefore, we decline mother's invitation to assess the adequacy of the ICWA inquiry and noticing process that is, based on our assessment of the record, still ongoing as well." (*Ibid.*)

Here, we are faced with the identical fact pattern. Because the juvenile court made no ICWA ruling at or before the challenged jurisdictional and dispositional hearing as to whether the ICWA applied to these proceedings, father's claim is premature. Put another

way, any ICWA issues are not ripe for review.  Therefore, we decline father's invitation to assess the adequacy of the ICWA inquiry and noticing process that is, based on our assessment of the record, still ongoing as well.  (*In re M.R.* (2017) 7 Cal.App.5th 886, 904.)

DISPOSITION

The appeal is dismissed.



_____/s/_____
EARL, P. J.

We concur:


_____/s/_____
MESIWALA, J.


_____/s/_____
WISEMAN, J.[*]

---

[*]     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.